Andrew J. Guzzo (HI-SBN 010586)
Kelly Guzzo, PLC
7 Waterfront Plaza
500 Ala Moana Blvd., Suite 7400
Honolulu, HI 96813
Telephone: 808-664-4651
Email: aguzzo@kellyguzzo.com
*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
# DISTRICT OF HAWAII

| | | |
|---|---|---|
| SHEKINAH STEVENS, | : | Case No. 1:26-cv-30 |
| | : | |
| | : | **COMPLAINT AND DEMAND** |
| Plaintiff, | : | **FOR JURY TRIAL** |
| | : | |
| v. | : | |
| EQUIFAX INFORMATION SERVICES, | : | |
| LLC, EXPERIAN INFORMATION | : | |
| SOLUTIONS, INC., and TRANS UNION, | : | |
| LLC, | : | |
| | : | |
| Defendants. | : | |

# COMPLAINT

Plaintiff Shekinah Stevens files this Complaint against Defendants Equifax Information Services, LLC, Experian Information Solutions, Inc., and Trans Union, LLC. In support, she alleges as follows:

## PRELIMINARY STATEMENT

1. Congress enacted the Fair Credit Reporting Act ("FCRA") to protect consumers from the devastating impacts of inaccurate credit reporting. S. Rep. No. 91-517, at 1 (1969) (explaining that the FCRA was intended to "prevent consumers

from being unjustly damaged because of inaccurate or arbitrary information in a credit report"); *see also Guimond v. Trans Union Credit Info.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (explaining that the FCRA was enacted "to protect consumers from the transmission of inaccurate information about them and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner" (citations omitted)).

2. The statute's express purpose is for "consumer reporting agencies [to] adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. 1681(b).

3. Even so, inaccurate credit reporting is still a pervasive, long-standing issue for consumers. For example, in 2012, the FTC published a reporting finding that twenty percent of consumers who participated in its study had at least one error on their credit report.[1] Almost ten years later, the situation was even worse: a 2021

---

[1] *See* Fed. Trade Comm'n, *Report to Congress Under Section 319 of the Fair and Accurate Credit Transactions Act of 2003*, at 64 (Dec. 2012), https://www.ftc.gov/sites/default/files/documents/reports/section-319-fair-and-accuratecredit-transactions-act-2003-fifth-interim-federal-trade-commission/130211factareport.pdf.

study found that more than 34 percent of surveyed consumers identified at least one error on their credit reports.[2]

4. Here, Ms. Stevens's credit reports included inaccurate information about her student loans after they were discharged in her Chapter 7 bankruptcy.

5. After her student loans were discharged as part of her bankruptcy case, Equifax, Experian, and Trans Union still reported them as outstanding loans with balances and without any notation that they had been discharged in bankruptcy.

6. When Ms. Stevens disputed the inaccurate reporting of the student loans with the Defendants and provided proof that the account was included in her bankruptcy—including a copy of the discharge order—each of the Defendants failed to adequately investigate her disputes or update the inaccurate entries on her credit reports.

7. As a result, Ms. Stevens alleges that each of the Defendants violated the FCRA, § 1681e(b), by failing to reasonably ensure the maximum possible accuracy of her credit reports. *See Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011) (breaking down the requirements of § 1681e(b) and explaining that "'assure' means to make sure or certain: put beyond all

---

[2] *See* Syed Ejaz, Consumer Reports, *A Broken System: How the Credit Reporting System Fails Consumers and What to Do About It* (June 10, 2021), https://advocacy.consumerreports.org/wp-content/uploads/2021/06/A-Broken-System-How-the-Credit-Reporting-System-Fails-Consumers-and-What-to-Do-About-It.pdf.

doubt, 'maximum' means the greatest in quantity or highest degree attainable, and 'possible' means something falling within the bounds of what may be done, occur or be conceived" (cleaned up) (quoting *Webster's Third New International Dictionary* 133, 1396, 1771 (1993))).

8. Ms. Stevens also alleges that each of the Defendants violated the FCRA, §1681i, by failing to fully investigate her disputes.

## JURISDICTION AND VENUE

9. This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

10. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because Ms. Stevens resides in this District and Division, and a substantial part of the events giving rise to Ms. Stevens's claims occurred here.

## PARTIES

11. Plaintiff Shekinah Stevens is a natural person residing in this District and Division.

12. Defendant Equifax is a foreign limited liability company with a principal place of business in Atlanta, Georgia. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

13. Defendant Experian is a foreign corporation with a principal place of business in Costa Mesa, California. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

4

14. Defendant Trans Union is a foreign limited liability company with a principal place of business in Chicago, Illinois. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

## FACTS

15. In August 2021, Ms. Stevens filed for Chapter 7 bankruptcy and received a discharge on November 30, 2021.

16. Facing ongoing financial difficulties as a single mother, Ms. Stevens moved to reopen her Chapter 7 bankruptcy on April 12, 2024, and the Bankruptcy Court granted her motion on April 15, 2024.

17. On April 15, 2024, Ms. Stevens filed an adversary proceeding against the United States Department of Education and the Higher Education Loan Authority of the State of Missouri ("MOHELA") seeking a determination that excepting her student loans from discharge would impose an "undue hardship" on her and her dependents. Ms. Stevens sought to have her entire student loan balance, $81,417, discharged.

18. The United States Department of Education and MOHELA both defaulted in the adversary proceeding, and on April 29, 2025, the United States Bankruptcy Court for the District of Hawai'i entered default judgment against them and granted a discharge of all of Ms. Stevens's student loans. *In re Shekinah Stevens*, Adv. Pro. No. 24-90009 (D. Haw. Apr. 29, 2025) (ECF Nos. 21, 22).

19. After getting the loans discharged and learning her current apartment rental renewal would require her to pay an extra $361 per month, Ms. Stevens explored purchasing a condominium.

20. As part of that process, she learned that the condominiums in her budget range would be less each month than it would cost to renew her lease.

21. Ms. Stevens attempted to get preapproved to purchase a condominium within her budget. However, that process was stalled because the discharged loans continued to report on her credit as outstanding debt.

22. When Ms. Stevens checked her credit reports, she saw that each of the Defendants were reporting that her student loans as open accounts with outstanding balances, and none of them included any notation that they had been discharged in bankruptcy. This, of course, made it looks like her she still owed more than $80,000 in student loans, which was not correct.

23. Ms. Stevens disputed the reporting of each of her student loans with Equifax, Experian, and Trans Union in July 2025. She explained that her student loans had been discharged as part of her Chapter 7 bankruptcy and asked that the loans be deleted or updated to reflect a $0 balance. She attached a copy of the order discharging her student loans to her dispute.

24. Upon information and belief, Equifax, Experian, and Trans Union forwarded Ms. Stevens's dispute to her student loan servicer, MOHELA.

25. Upon information and belief, in response to Ms. Stevens's dispute, MOHELA performed a cursory review of its records and verified its previous reporting that the student loans were still open accounts with outstanding balances.

26. Rather than rely on the documents that Ms. Stevens provided with her dispute, which clearly showed that the student loans had been discharged, Equifax, Experian, and Trans Union relied entirely on MOHELA's response to Ms. Stevens's dispute.

27. As a result, the student loans continued to report on Ms. Stevens's credit reports as open accounts with outstanding balances—without any mention that they were discharged.

28. Ms. Stevens sent follow-up disputes to Equifax, Experian, and Trans Union in September 2025, October 2025, and December 2025. Each of these follow-up disputes again explained that the student loans were discharged and asked that the loans be updated to reflect their discharged status with no outstanding balance. She again included the discharge order showing that her student loans were discharged.

29. Equifax, Experian, and Trans Union again used the same defective investigation process to "investigate" and respond to Ms. Stevens's disputes—instead of reviewing the proof that Ms. Stevens attached to her dispute, they merely relied on MOHELA to investigate and respond to the disputes.

30. As a result, when Equifax, Experian, and Trans Union received MOHELA's dispute response that the previous reporting was correct, they did not update Ms. Stevens's student loans to indicate that they had been discharged in bankruptcy and continued to report that Ms. Stevens owed more than $80,000 in student loans.

31. As a result of Defendants' conduct, Ms. Stevens has suffered significant actual damages, including a reduced credit score, inability to obtain credit, embarrassment, humiliation, and emotional distress.

### *Defendants' Investigations Willfully Violated the FCRA*

32. As a standard practice, Equifax, Experian, and Trans Union do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the furnisher despite several court decisions admonishing this practice. *See, e.g.*, *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is

disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

33. Upon information and belief and consistent with their standard policies and procedures, Equifax, Experian, and Trans Union automatically generated their "investigation" results once MOHELA verified the status of the account. Equifax, Experian, and Trans Union did not take any extra actions to verify the accuracy of the information that the furnisher provided them.

34. Instead, Equifax, Experian, and Trans Union blindly accepted MOHELA's version of the facts and continued to report the inaccurate, derogatory information on Ms. Stevens's credit report.

35. Equifax, Experian, and Trans Union continue the practice of parroting the furnisher's response despite several lawsuits alleging (and establishing) that they fail to conduct a reasonable investigation under the FCRA.

36. Equifax, Experian, and Trans Union do not intend to modify their dispute-processing procedures because doing so would drastically increase their operating expenses.

37. As a result, at all times relevant to this Complaint, Defendants' conduct was willful and carried out in reckless disregard for a consumer's rights under the FCRA. For example, their conduct was willful because they ran a risk of harm that was known, or so obvious it should have been known, by failing to adequately

investigate consumer disputes or implement any procedure to identify and correct these common errors before furnishing reports.

## COUNT ONE:
## VIOLATION OF FCRA, 15 U.S.C. § 1681e(b)

38. Ms. Stevens incorporates the preceding allegations.

39. Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Ms. Stevens's credit reports and credit files that they published and maintained.

40. Because of Defendants' conduct, Ms. Stevens suffered actual damages, including, without limitation, a reduced credit score, inability to obtain credit, embarrassment, humiliation, and emotional distress.

41. Defendants' conduct in violating § 1681e(b) was willful, rendering them liable to Ms. Stevens for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n.

42. In the alternative, the Defendants were negligent, entitling Ms. Stevens to a recovery under 15 U.S.C. § 1681o.

## COUNT TWO:
## VIOLATION OF FCRA, 15 U.S.C. § 1681i

43. Ms. Stevens incorporates the preceding allegations.

44. Defendants violated multiple sections of § 1681i, including but not limited to: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate in violation of § 1681i(a)(1); (2) failing to provide MOHELA with all the relevant information about Ms. Stevens's disputes in violation of § 1681i(a)(2); (3) failing to review and consider all relevant information submitted by Ms. Stevens in violation of §1681i(a)(4); and (4) failing to promptly delete the disputed inaccurate items of information from Ms. Stevens's credit file or modify the item of information upon a lawful reinvestigation of § 1681i(a)(5)(A).

45. Because of Defendants' violations of §1681i, Ms. Stevens suffered actual damages, including, but not limited to, a reduced credit score, inability to obtain credit, embarrassment, humiliation, and emotional distress.

46. Defendants' violations of § 1681i were willful, rendering them liable to Ms. Stevens for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n.

47. In the alternative, the Defendants were negligent, entitling Ms. Stevens to a recovery under 15 U.S.C. § 1681o.

WHEREFORE, Ms. Stevens moves for statutory, actual, and punitive damages as pleaded, as well as her attorneys' fees and costs against each of the Defendants; for prejudgment and post-judgment interest at the legal rate, and any other relief the Court considers appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL.**

                                            Respectfully submitted,
                                            **SHEKINAH STEVENS**

                                            */s/ Andrew J. Guzzo*
                                            Andrew J. Guzzo (HI-SBN 010586)
                                            Kelly Guzzo, PLC
                                            7 Waterfront Plaza
                                            500 Ala Moana Blvd., Suite 7400
                                            Honolulu, HI 96813
                                            Telephone: 808-543-1122
                                            Email: aguzzo@kellyguzzo.com
                                            *Counsel for Plaintiff*